May I have the clerk please call the next case? 112-1507, City of Chicago v. Joseph Zwicko Counsel, you may proceed. Good morning, your honors. Counsel, may it please the court, my name is Joseph Zwick, I represent the employer in this case, defendant, City of Chicago, defendant, appellant, City of Chicago. Your honors, our position in this claim is that the commission's decision awarding TTD benefits and maintenance benefits was incorrect as, number one, against the manifest way of the evidence, and two, as a matter of law. The record shows that the claimant began working as a fireman, as a candidate in training at the fire academy on May 1, 2008. At that time, he began receiving salary as a fireman. Over the course of May 6 and 7, he developed a condition known as compartment syndrome and rhabdo. Could you just cut to the chase and distinguish this from Dodaro, please? Well, the Dodaro issue, there are other issues that are, I think, controlling aside from Dodaro, and if we, you know, and I'll address those eventually as well. But as far as the Dodaro issue, the distinction is really centered around the fact that the pension code defines a fireman with regard to pension benefits as someone who is receiving salary as a fireman. The police code's definition is much more vague. So even if, you know, we look at the definition that the court used in Dodaro, I would submit that Mr. Lacoste was admitted formally as a member of the fire department because on day one, he began receiving salary as a fireman. And since he was able to receive salary as a fireman, he was clearly entitled to benefits under the pension code for injuries received as a result. Well, it's that simple. One of the reasons in Dodaro was that he was not a sworn officer. He didn't have arrest powers, didn't have a badge. Here, doesn't the record establish, the individual is not a sworn officer of the fire department. He was not given a badge or I.D., identifying him as a Chicago fire paramedic. He received a lower salary than a sworn firefighter. Aren't those factors to be considered? He's not on exactly the same par with a fully sworn firefighter. Certainly, there are certainly factors that are strikingly similar to Dodaro. Absolutely. But the question then is, was he admitted in any sort of formal sense as a member of the fire department? The issue with regard to an oath, whether someone is administered an oath, is somewhat arbitrary in the sense of application to these types of cases. And the reason is, you could give the oath, the same oath on the day they walk into the academy, and that doesn't change anything about the nature of the type of benefits that they're entitled to. It doesn't change the fact that they are entitled to pension benefits for injuries that occur during the course of their employment. They don't give them the oath at the beginning because they don't know whether they're going to pass all of the phases of training they have to pass to become a Chicago fire paramedic, right? That's probably correct. So, I mean, they're not really, they don't really have the job until they complete and pass whatever training and testing they're subjected to. Well, correct. But, again, the purpose of the act and the purpose of the pension code is to compensate employees who are injured in the course of their employment. They serve the same purpose. So realistically that it is standard. Let's talk about that. If a Chicago fireman is injured on duty, what is he entitled to? If he's injured on duty, he's entitled to a year's, up to a year continuation, and then continued benefits after that if he can establish that he's disabled. And what lumpsum benefits is he entitled to for the nature and extent of his injury? They don't offer lumpsum benefits. None. He gets nothing. But he does get it under workers' comp, doesn't he? He not only gets two-thirds of his average weekly wage, he also gets compensated for the loss of use of his body part. So the Chicago pension firemen get absolutely no compensation for the loss of their body part, do they? Certainly not. They don't. And there are certainly distinctions. And the distinction is because it's a city of one million? Well, that's the statutory distinction. You know, that's what the legislature did. Well, that's what the Supreme Court hung its hat on when it said it was constitutional. Pardon me? And that's what the Supreme Court hung its hat on when they said that this legislation was constitutional, because the city had more than one million people in it. Does that make sense to you? Well, Your Honor. It makes no sense to me. It does in a sense that there's a difference in terms of, I mean, that if you take an individual who is a fireman who is restricted from going back to his job, he can get that benefit forever. Mr. Lacoste potentially could have if he could have said that. Well, what your position is, he was a salaried fireman. Is that correct? That's correct. He was drawing salary as a fireman. As a fireman. And he did apply for an in-line-of-duty disability pension, did he not? He was. And he did. And he would be entitled to all those benefits if it were granted. If he was able to demonstrate that he was disabled from returning to work as a fireman. Well, I meant if he was granted. I didn't ask what determined granted. But if it was granted, he'd get those benefits. Exactly. And he had his hearing. Mr. Lacoste had a hearing, the same type of hearing that a 20-year veteran of the fire department would have had, seeking the same types of benefits that a 20-year veteran. So he had the same status in training as a fireman who'd been there how many years? Any number of years, correct? Well, he hadn't even been there. He'd only been there a matter of days. I didn't ask when he'd been there. I said he had the same status and right to benefits as a fireman who'd been there plus 20-some years. Is that correct? Exactly. Okay. So he's not in a position of limbo without protection. Exactly. Can I ask you a question? Did he have the same civil service benefits vis-à-vis his ability to be discharged during that period of time? That I'm not sure. Or is he in the same position as Dodaro while he was still in the academy? He was not entitled to any of the civil service benefits for discharge. Yeah, but those are different benefits, though, Your Honor. The question is the same. Well, no, but that depends on whether he's a full-time fireman or not. You know, a fireman entitled before you fire him, he has to be entitled to certain hearings. The probationary firemen I don't believe are. And the same is true of a policeman. In Dodaro, a probationary policeman can be discharged at will. He's not entitled to the hearings before the police board that a sworn officer is entitled to. And doesn't that change his status vis-à-vis whether he's a paramedic fireman or not? It changes his status with regard to ongoing employment, but it certainly doesn't change his status with regard to a right to claim benefits for injuries as a result of his employment. So, yeah, and that's really what the Workers' Compensation Act is for. And so the analysis applies in this case to why is there an exception in the Workers' Compensation Act? It's there because there's a provision, there are provisions that provide for protection for this class of individuals. And Mr. Lacoste fell within that class. As I mentioned before, Your Honor, the, Your Honors, the, in this claim, he was eventually provided with notes stating that he was able to return to his regular activities. His orthopedic doctor on August 26 said that from an orthopedic standpoint he was recovered and able to resume activities. Dr. Kramer provided a note in September of 2008 stating that from a renal point of view, so long as he avoided overexertion and remained well hydrated, he could resume regular activities. Dr. Kramer later wrote a note stating that he was cleared for regular activities. And Dr. Fox stated that he was cleared for unrestricted physical activities. Now, within all those statements or attached to all those statements are differing explanations in varying degrees in terms of what level of activity Mr. Lacoste would be able to pursue. There's varying degrees of unrestricted activity to avoiding overexertion. Even if you accept that Mr. Lacoste's restriction prevents him from going back and performing the same level of physical activity that he was asked to do in the fire academy, he's still very much employable. There's no dispute, there's no doubt that Mr. Lacoste was able, physically able, to go back to his prior job as a paramedic at Children's Hospital. In fact, he went back and asked for that job and testified that the only reason he wasn't working in that job was because it wasn't available to him. He then took a part-time position beginning in August, or I'm sorry, October of 2009 as a part-time IV technician. He stated that that was a better opportunity for him. He never went and looked for another paramedic job. He never asked any other hospitals, any other entities for a paramedic position. He was physically able to do so. He chose not to and instead accepted the position as an IV technician because he viewed that as a better opportunity for himself than his prior employment as a paramedic. Essentially, Your Honor, what we're left with is a complete lack of evidence to support any finding that Mr. Lacoste was entitled to any sort of vocational rehabilitation and entitled to any sort of maintenance associated with vocational rehabilitation. Therefore, following the Hunter reasoning that was cited in the Roper case, that decision awarding maintenance benefits is incorrect as being against the manifest way to the evidence. The other factor in that regard is that Mr. Lacoste did have a judicial hearing before the pension board to determine whether or not he was physically disabled from returning to employment. That the evidence based on the evidence presented, he was denied. They found that he did not prove that he was physically disabled from returning to employment with the fire department. The Schratzmeyer court noted that with collateral estoppel, even if only a slight amount of evidence was presented on the disputed matter, that's sufficient to establish a collateral estoppel. You're not really pressing the raised judicata issue, are you? Because there's clearly different parties, there's different issues. I mean, are you pressing the raised judicata? The issue is the same, because the issue in terms of whether or not he was entitled to any sort of ongoing benefits is whether or not he's disabled from performing his job. Yeah, but it falls under the rubric of collateral estoppel, not ratio to cut under the circumstances. Collateral estoppel is a branch of raised judicata. It's how the courts have explained it. There's no unity of parties, so it has to fall under the requirements for collateral estoppel. Correct. He had an opportunity to litigate it. He litigated it before a body of competent jurisdiction, and the issue was fixed, and it was actually decided. Correct. Wow. With that, unless there's any questions, thank you, Your Honors. Thank you, Counsel. Counsel may respond. Good morning, Your Honors. Jeffrey Hart on behalf of Joseph Lacoste. Counsel, good morning, Mr. Zwick. This case on all fours is the Daddario case, which Justice Hudson penned. That was a unanimous decision that the city filed for rehearing on, which was denied. The city also filed that case to the Supreme Court for petition for leave, and that was denied. The city is here trying to relitigate the Daddario case. Lacoste, the same pension code provisions, the same section of the Workers' Compensation Act, Section 1B1, applied. Lacoste was never a fireman. He was in training at the training academy, and he was a candidate paramedic. He was not receiving the same type of salary as a fireman. He was not even training to become a fireman. He was training to become a fire paramedic. He was not sworn in. He had no credentials. He ---- Was I not being a fireman then? Or become a ---- Well, he's not duly appointed. He was not sworn in. You made a distinction between training to be a fireman and a paramedic. I wondered if that ---- Well, he's saying that he's being paid the same salary as a fireman. A paramedic's salary and a fireman's salary are completely different, as are a candidate's salary as to a candidate paramedic and a candidate fireman. That's the same distinction which was drawn in the Daddario case, that the recruit, Ms. Daddario, was not paid the same salary as a duly appointed member of the police department. She was a member of the academy, not a member of the department. With respect to the collateral estoppel issue, we're not ---- the same benefits under the pension code do not apply. Under workers' compensation, he gets medical benefits. He gets vocational assistance. He gets permanent partial disability. He gets temporary partial disability. He gets ---- Yes, but on the factual question of whether he was capable of returning to work as a full-time fireman, that decision was made by the pension board. And why is he not barred by the doctrine of collateral estoppel from relitigating that question? Well, that was not their decision. Their decision was that it was vague. It was that he was not entitled to duty disability pension benefits. Why? They gave a reason. Did they not? Well, the reason to me is incredibly vague. You know, the evidence submitted in the workers' compensation case indicates their own physician, Dr. Hirsch, indicates that a guy, that Mr. Lacoste cannot return to the fire academy because of the nature of the rigors of the type of training that he was going through. He was exercised into rhabdomyolysis by intentionally being held with water for two days of exercise. Right, right. The board decided he was fully recovered and fully able to perform his job as a paramedic. So doesn't that bear on the TTD and TPD? No, it doesn't. Why? You're talking about the decision from the pension board? Yes. Because they're absolutely different issues. Why is it different whether he can perform his duties as a paramedic after that date or not? Why is that different? Well, the Chicago Fire Department's own physicians would not return him to work. There's nothing new about that. Sir, there's nothing new about that. Right. The board says you can't come, you can work, and then they hire Dr. Motta, who says you can work, and they won't let him go back to work. No. So they've got to sue him for breach of contract is what they have to do in order to get their jobs back. They do this all the time. It's a game with them. But the fact of the matter is the board is the adjudicatory body, and they made a factual determination, he's capable of working as a fireman. That's what they made. How can he dispute that later at any other level and before any other board? Well, because he's not a fireman. He is not a fireman. He's a trainee. No, he's capable of performing his duties. No. D'Addaro only says he's entitled to workers' compensation benefits. That's all it is. Now, but the fact of the matter is he may be entitled to benefits two ways. He may be entitled to some pension benefits, and he may be entitled to workers' compensation benefits. He goes before this pension board, he gets a hearing, and they make a factual finding. You can work as a fireman. Now you're telling me you can go back before the Workers' Compensation Commission and say I can't work as a fireman? No. What I'm saying is that he was never a fireman. How can he be returned to work as a fireman? Or as a paramedic? No, he was in the training academy. He was not yet sworn in. He was injured on the second day of training in the clinical. What do you say, he has a different job? He's got a different job altogether. He's a paramedic in the training academy. He's not a duly licensed member of the department at that time. But he's entitled to pension benefits. He's not entitled to pension benefits. He is not? He's not entitled to pension benefits. He's not entitled to an online duly pension? No. Then why did he go for a hearing? Because his commander, Commander Edinburgh, instructed him to file the petition for benefits. Because they would not return him back to work. So why did the board even bother with anything? Just say hey, you have no standing here. You're not a fireman. Well, because Mr. Lacoste had been without pay for several years after they exercised him into renal failure and he needed income. We know the facts. He lost his home. It's really a gruesome deal. It is a gruesome deal. Okay. But that doesn't mean anything as to the law. Apparently you're saying he had no status at all to get any benefits, so this was a hearing where the findings of the hearing board have no impact at all because he was never entitled to even have the hearing. Is that what you're saying? Essentially, yes. That's what I'm saying. Do you have any case law that says that? I don't have any case law that says that. But you can see Jackson's consternation with Lacoste even being in front of the pension board at the time. You did file for administrative review of the pension board, didn't you? I did. Yes. What happened there? Because that was denied. Yes. You lost it. Yes. And they didn't ask you for a vacating because of lack of jurisdiction, did you? That's not what I argued. I argued that there was evidence that was not submitted. The workers' compensation case was filed before the pension case. The city of Chicago denied plaintiffs' ability to go forward with the depositions of the treating physicians, so I had to file for indebtedness to get those depositions done. In the interim, Lacoste was instructed to file before the pension board, and he did so pro se. And then that hearing was expedited. Okay. And it was after that hearing that the depositions of the ‑‑ actually, it was within the same month that the depositions of Dr. Fox, Dr. Kramer. I understand, but you're dancing around the legal issue we want to talk about. Is it your contention that the pension board determined he was able to fully perform the jobs of a paramedic? Well, yes, they did find that, by the way. But he wasn't really have the job of a paramedic. You're entitled to argue before the commission that he's not capable of performing the duties of a candidate for paramedic, which is a different job. That's true. Yeah. Because if he gets sent back ‑‑ Well, your theory is it's a different job. It is a different job altogether. Totally different job.  He has to finish his training at the academy before he can become a fire paramedic and get that bump in pay, get sworn in, and be subject to the pension code and all the benefits that that may afford and also the Civil Service Act and the ability to not get discharged from his job, you know, on the basis of, you know, as an employee at will. So he's clearly not entitled to it, but yet again he filed a petition. He's instructed to do it. You can see his testimony.  Yeah, it is. And is there any claim or do you claim that at this pension board hearing he didn't get full due process? In other words, are you claiming it wasn't a real hearing? Oh, yeah. I'm just asking. Let me find the testimony. Okay. Here we go. Here's witness. He was asked why he filed it, and he says, they told me to come here. Chairman Jackson, I can go tell you to jump out the window, and you're going to go jump out the window? LaCosta, well, when I'm a candidate and a commander tells me to do something, I do it. Chairman Jackson, I think I'm a little higher than a commander, and I'm telling you just because the commander told you to do something doesn't mean you belong here. You're in the wrong forum. Chairman Jackson continued, nor can we be responsible for what the city did to you over there. I want to make sure you understand that there is no backstop because something happened to you with what the city did to you over there. You're suing the city and whoever else, but this is not a backstop for them over here. So clearly he's instructed by his commander to file the papers with the board. So he did as told. But you can't relitigate that. I'm not trying to relitigate that. You're asking me questions about the issue. But we're trying to get you to discuss the collateral estoppel issue. Correct. And you give us all these terribles that happened to the guy. They have nothing to do with the collateral estoppel issue. Collateral estoppel, we don't have the sameness of parties. We don't have. No, that's res judicata. That's res judicata. On collateral estoppel, we don't have identical issues being addressed. Well, do we? That's an interesting question. If the issue is whether he can perform the duties of a paramedic, we have a unity of issue. If, as you contend, there are two different jobs, two different actual jobs. Now, the DARA doesn't say that, by the way. It just says he was a sworn member of the department and, therefore, didn't fall under it. But if you're right, you contend there are two different jobs. You're right. There was no unity of issue. One decided he can't do the job as a paramedic. No one has yet decided whether he can do the job as a candidate. And that's what you want decided. But the other identical issues which were not decided by the pension board were medical benefits. Was he entitled to medical benefits? The workers' compensation commission said yes. We're only talking now about whether he's entitled to any temporary total disability for anything that occurs after that date in August that they picked out, whatever that was. Because of the finding of the board that as of that specific date, he, August the 3rd, 2009, his injuries had resolved by that date and he had fully recovered and was able to perform the duties as a paramedic. Is he collaterally stopped from relitigating that question? No, because they're different jobs. No, no, no. You've got to listen to what I asked you. The board found that as of, let me read it to you again, as of August the 3rd, 2009, the injuries which he sustained were resolved by that day and that as of that day, he was fully recovered and able to perform the duties of a paramedic. Can he relitigate that question? Again, a paramedic... No, that requires a yes or a no under the doctrine of collateral stop. Can he relitigate that? That specific issue? Yes. If he was, in fact, a paramedic. I didn't say if. I said can he relitigate that finding? That specific finding, no. But the distinction that I'm trying to draw here... I understand what your distinction is. He's got to finish the academy. If we disagree with your distinction, you lose. If we agree with your distinction, you win. But the fact of the matter is he cannot relitigate the question... But that's just TTD. ...as of that day. That's just TTD. He cannot be a paramedic. But that's just TTD. That's not medical. That's not medical. Counsel, your time is up. Thank you. Counsel, you may have time to reply. Now, what do you say about these two different jobs? Well, I mean, what the finding was was that he was fully recovered. And capable of performing the duties of a paramedic for the city of Chicago. Correct. I mean, that's the job he's asking Chairman Jackson about. And that's what Chairman Jackson was addressing in the testimony that counsel recited. Chairman Jackson is talking about him seeking an additional benefit that he's not entitled to the pension board. And that's them giving him his job back. Similarly, he's attempting to pursue the same thing in many respects before the commission. But the question was asked with regard to the case law. The case law O'Callaghan case clearly states that, you know, candidates injured during training are entitled to pension benefits under the pension code. Just real briefly, Your Honors, there's, you know, this distinction with regard to whether or not. So what is his job? Well, that's a good question. And that's one of the things I was going to just state is there's some discussions in relation to the Dodaro issue. What it applies here is that, you know, this notion that Mr. Lacoste is a member of the academy but not a member of the department. And, you know, the fact of the matter is this claim is filed against the Chicago Fire Department. He's an employee of the fire department. We're not here unless he's a member of the fire department. Are there different jobs in the fire department? Exactly. And there's different rates of pay. When you're a candidate in training receiving salary as a fireman, you get one level of pay. You get sworn in, you get another level of pay. He's actually an employee of the city of Chicago. He's not an employee of the department. He is a member of the department who happens to be an employee of the city of Chicago. And there are many members of the department, people who work within the fire department, that are not covered by the pension code. Their maintenance people are not. They're covered by workers' comp. The question here is, was he a paramedic covered by or was he, does he fall under Dodaro? He wasn't actually a paramedic because he hadn't completed his training and wasn't sworn in. That's the issue. That's one of the issues, certainly. And we would submit that he was a member of the fire department because he was defined under the pension code as an active fireman because he was receiving salary as a fireman. Do all trainees become fire department paramedics? Yes, if you're in training. You don't even have the training. You have to have training. The training is a necessary part of being a fireman. One hundred percent of everybody who's admitted to training becomes a Chicago Fire Department paramedic? Nobody? No, certainly not. Mr. Lacoste didn't finish the training and he's not a fireman. Okay, there we go. And he's no longer a fireman. So, I mean, that's a step, a very important step in the process, certainly. I have been a little confused by this. They said he can be, he's a paramedic, right? He was a paramedic before he went in? Well, he worked as a paramedic for Children's Hospital prior to. But you have a pension board saying he can perform all the duties of a paramedic, right? Correct. Then why isn't he a member of the fire department? Well, he is a member of the fire department. That was in the. . . So what was the fire department? So he should still be a fireman, correct? Yes. I was missing something here. The paramedics work in the firehouse. They work. . . I mean, we all understand that, okay, that you're running a little marine drill camp down there to be a fireman, paramedic. I mean, that's what it is. I can't even see any rational relationship to what that whole program was. And yet you've got a pension board there that says he's now able to be a paramedic. Well, then why isn't he still in the fire department? Well, that's an employment issue. It's certainly not. It makes no sense, does it really? I mean, so how much credence can we give to this pension board determination that he can be a paramedic? Counsel, let me ask you this. We've lost over something, I think, significant. According to the claimant, candidates are not able to render medical assistance to citizens on behalf of the city. Is that true? He cannot do that while he's in training? Yeah, that's my understanding. Well, then how could he be a paramedic? He can't render any assistance to anybody. Understood. It's a matter of policy that you don't set someone off to attempt medical attention unless they've completed the training. What did that training that caused his injury have anything, if anything, to do with his ability to get paramedical assistance to a citizen of the city of Chicago? Well, they all work under the same umbrella as firemen. And it's, you know, the training is the same. There's overlapping duties, as I understand it, in terms of paramedic duties and fire duties. Now, certainly it would be hard-pressed for certainly myself or, you know, a lot of people to discuss what's necessary for a fireman to be, you know, to complete that training. That's, you know, something that's... Did the board say that he's unable to receive an in-line duty disability pension because he was qualified as a fireman? Because he was physically capable of returning to employment. To his full regular duties. Regular duties as paramedic. He was a trainee back to where he was. Well, correct. That's the issue that they're going to decide. And as a paramedic trainee, he can't administer first aid to anybody in the city of Chicago, can he? Not as a representative of the fire department. He can because he worked as a paramedic. But as a representative of the fire department, you keep telling us he's a fully-fledged paramedic in the eyes of the city. Well, if he is, then why can't he treat anybody? You can't have him pull his legs, can you? No, it's a matter of policy that restricting individuals who haven't completed all the training to actually administering treatment until you're concerned. You can't judge that on an individual basis until all the individuals have passed the course. So under the pension benefit system scheme, he's a candidate in training, right? Under all aspects of this, he's a candidate in training. So the pension code would be able to give him benefits because he's a candidate in training if they found he had an in-line disability? Correct. Well, the pension benefit, the pension code is able to address his claim for ongoing disability because he's defined as an active fireman under the pension code because he's receiving salary as a fireman. And he's receiving salary as a fireman because he's a candidate in training at the academy. Thank you. Thank you. The court will stand at brief recess.